Linda E. **WRAY**, Plaintiff,

v.

**EDWARD BLANK ASSOCIATES, INC., Edward Blank and Alyce Cucurullo in their individual and corporate capacities, Defendants.**

**No. 94 Civ. 1308(LMM).**

United States District Court, S.D. New York.

April 16, 1996.

Stuart R. Wolk, Law Offices of Wolk, Newman and Maziraz, New York City for plaintiff.

Zulima V. Farber, Lowenstein, Sandler, Kohl, Fisher and Boylan P.C., Roseland, NJ, for defendants.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

Plaintiff Linda E. Wray ("Wray") began working as a Payroll Clerk for Defendant Edward Blank Associates, Inc. ("EBA") on December 18, 1980. She continued working for EBA until her termination on May 5, 1992. Until late 1991, Wray's career at EBA

was going well. She was promoted from Payroll Clerk to Accounts Payable Clerk in March 1985, and promoted again, from Accounts Payable Clerk to Employee Benefits and Personnel Administrator in December 1991. Wray received twelve pay increases from December 18, 1980 to December 18, 1991, some of which were associated with her promotions (Compl. at Ex. A.) and until September, 1991 her employee evaluations were consistently good. (Compl. at ¶ 8.)

In September 1991, Defendant Alyce Cucurullo ("Cucurullo") became Wray's supervisor. Three months later, in December, 1991, Cucurullo informed her that she had been promoted to the position of Personnel Administrator. (Compl. at ¶ 13.) Shortly thereafter, Plaintiff began having problems at EAB. In early January, 1992, Cucurullo told Plaintiff that she was making "too many mistakes and needed monitoring." (Compl. at ¶ 13.) Later, Cucurullo told Plaintiff that new rules had been passed which forbade employees from taking work home, which Wray had previously been allowed to do. On April 1, 1992, Cucurullo met with Wray and discussed what Cucurullo claimed were Wray's job problems. Later that day, Cucurullo wrote Wray a confidential memo outlining several problems with Wray's work. In this memo, Cucurullo alleged, among other things, that Wray: had made errors in reviewing payroll documents; had not performed her ordinary duties during the regular workday; did not follow departmental rules and regulations; and could not work cooperatively within the department. (Compl. at Ex. B.) On May 5, 1992, Defendant Edward Blank ("Blank") terminated Wray from her job. At the time she was fired, Plaintiff was fifty-five years old. She was replaced by an immediate new hire who was thirty-five years old.

Plaintiff claims that Defendants Blank and Cucurullo decided to discharge her by April 1, 1992, and that complaints about her job performance were merely part of a conspiracy between Blank and Cucurullo to force her out of the workplace by making her work environment unbearable. Plaintiff further contends that she performed her work in an

exemplary manner, and that she was fired solely because of her age.

Plaintiff is suing Defendants Blank and Cucurullo in their individual and official capacities, as well as the corporate defendant EBA. Pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 (the "ADEA"), Plaintiff seeks to recover: 1) lost wages from May 5, 1992 until the present; 2) attorney's fees; and 3) damages for "[p]unitive damages for willful malicious, and intentional violations" of the ADEA.[1] (Compl. at ¶ 30(b).)

Pursuant to Fed.R.Civ.P. 12(f), all Defendants move to strike those portions of Plaintiff's complaint seeking punitive damages. Pursuant to Fed.R.Civ.P. 12(c), Defendants Blank and Cucurullo move to dismiss all of Plaintiff's claims against them in their individual capacities. For the reasons stated below, Defendants' motion is granted in part and denied in part.

### Standard of Review

#### Fed.R.Civ.P. 12(c)

In deciding a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the court must apply the same standard as that applicable to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989). When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), this Court may dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Plaintiff need not prove that she will ultimately be successful on the merits of her case. All she must do is articulate "a short and plain statement of the claim showing that [she] is entitled to relief." Fed.R.Civ.P. 8(a)(2).

#### Fed.R.Civ.P. 12(f)

Fed.R.Civ.P. 12(f) reads, in relevant part: "[U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Technically, motions to strike are not proper methods of disposing of part or all of a complaint. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (2d ed.1990). However, to avoid being restricted by the technical form of common-law practice, which the federal rules have abandoned, courts may treat motions to strike as motions to dismiss. *Professional Asset Management, Inc. v. Penn Square Bank*, 566 F.Supp. 134, 136 (D.C.Okl.1983); *Commercial Union Ins. Co. v. Upjohn Co.*, 409 F.Supp. 453, 459 (D.C.La. 1976). Unless a court strikes a pleading of its own initiative, a motion to strike must typically be made before responding to a pleading, or within 20 days after service of a pleading to which no responsive pleading is permitted. *Culinary & Serv. Employees Union, AFL–CIO Local 555 v. Hawaii Employee Benefit Admin., Inc.*, 688 F.2d 1228, 1232 (9 Cir.1982); Fed.R.Civ.P. 12(f). However, if a court deems it proper, it may consider motions to strike at any time. *United States v. Iron Mountain Mines, Inc.*, 812 F.Supp. 1528, 1534–35 (E.D.Cal.1992). This Court elects to treat Plaintiff's motion to strike as a timely motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Defendant's motion to strike portions of the Complaint will only be granted if, when read in the context of the entire Complaint, those portions of the complaint fail to state grounds upon which relief can be granted.

### Discussion

#### A

The ADEA prohibits employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). For ADEA violations, plaintiffs may recover such damages

---

1. In her original complaint Plaintiff alleged a cause of action under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e. Upon stipulation of all parties, those portions of the complaint alleging violations of Title VII and seeking damages for Title VII violations have been removed from the complaint.

as will restore them to "the economic position they would have occupied but for the discrimination." *Meschino v. International Tel. & Tel. Corp.*, 661 F.Supp 254, 256 (S.D.N.Y.1987). Additionally, the Second Circuit has encouraged district judges "to fashion remedies designed to ensure that victims of age discrimination are made whole." *Geller v. Markham*, 635 F.2d 1027, 1036 (2d Cir.1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). There are, however, limits to damage awards under the ADEA. Plaintiffs may recover neither emotional nor punitive damages under the ADEA. *See Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146–48 (2d Cir.1984); *Rogers v. Exxon Research & Eng'r Co.*, 550 F.2d 834, 841 (3d Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978) (if one could obtain emotional and/or punitive damages in federal court, he would have little incentive to settle during the administrative conciliation process).

■■■■ Plaintiff acknowledges that punitive damages are not available under the ADEA. Wray claims she is not seeking punitive damages, even though the word "punitive" appears in her demand for relief. Instead, she argues that with respect to her punitive damage claim, she is actually seeking liquidated[2] damages, which, though punitive in nature, are expressly permitted under the ADEA for willful violations of that Act. 29 U.S.C. § 626(b); *Trans World Airlines, Inc., v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623–24, 83 L.Ed.2d 523 (1985). Since Plaintiff's demand for damages in paragraph 30(b) of her complaint is based upon allegations of willful violations of the ADEA, the court will assume Plaintiff is seeking liquidated damages and not punitive damages. *See Corrente v. St. Joseph's Hosp. & Health Ctr.*, 730 F.Supp. 493, 499–500 (E.D.N.Y. 1990).

Defendants claim that Wray's request for even liquidated damages should be denied because she has not proved "what would be required to meet her burden of proving that she is entitled to liquidated damages under the ADEA." (Defendant's Brief at 8.) Defendant mistakes Plaintiff's burden. As previously discussed, Plaintiff need not allege willful violations of the ADEA with specificity; she need only comply with the liberal pleading requirements of Fed.R.Civ.P. 8(a)(2)[3] and Fed.R.Civ.P. 9(b).[4]

■■■ Defendant claims that Plaintiff's complaint should be dismissed because, unlike the *Frumkin* complaint, Plaintiff's allegation that "the action of the ... defendants in terminating plaintiff based upon age is willful intentional, [and] malicious," (Compl. at ¶ 28) is unsupported and conclusory. Defendant overlooks the fact that in addition to her allegation of willfulness Plaintiff has also alleged events that could possibly support a conclusion that over a five month period Blank and Cucurullo engaged in conduct designed to make Plaintiff appear incompetent so she could be fired without recourse. (Compl. at ¶¶ 12–21.) Therefore, the Court concludes that pursuant to Fed.R.Civ.P. 12(b)(6), Wray has alleged facts sufficient to withstand a motion to dismiss her liquidated damage claim.

**B**

Arguing that the ADEA does not permit actions against defendants in their individual capacities, Blank and Cucurullo move to dismiss all claims against them as individuals.

■■■ The ADEA prohibits an "employer" from discharging an employee on the basis of age. 29 U.S.C. § 623(a)(1). The ADEA defines an employer as one who is "engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty calendar weeks in the

---

2. Liquidated damages under the ADEA are damages equal to "minimum unpaid wages or ... unpaid overtime compensation." See *Bruno v. W.B. Saunders Co.*, 882 F.2d 760 (3d Cir.1989).

3. *See Frumkin v. IBM*, 801 F.Supp. 1029 (S.D.N.Y.1992) ("Fed.R.Civ.P. 8(a)(2) entails no requirement that [a plaintiff] employ the phrase

'willful violation.'" A plaintiff need only "articulate 'a short and plain statement of the claim showing [he] is entitled to relief.'")

4. Fed.R.Civ.P. 9(b) provides, in part, that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."

current or preceding calendar year" or "any agent of such a person." 29 U.S.C. § 630(b). Defendants claim that Blank and Cucurullo are neither "employers" nor "agents" under the ADEA, and therefore cannot be held individually liable under that Act. *See Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11 Cir.1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4 Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9 Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1049, 127 L.Ed.2d 372 *reh'g denied*, — U.S. —, 114 S.Ct. 1585, 128 L.Ed.2d 226 (1994). Because the ADEA incorporates the word "agent" into its definition of "employer," *see* 29 U.S.C. § 630(b), the issue of agent liability is addressed by the following discussion of employer liability. Though the Second Circuit has not had the opportunity to address the issue of individual liability under the ADEA, this Court holds that individuals in their individual capacity may not be liable under the ADEA.

Because there are substantial similarities between the ADEA and Title VII of the Civil Rights Act of 1964, courts have looked to Title VII cases for guidance when interpreting certain terms under the ADEA. *See Falbaum v. Pomerantz*, 891 F.Supp 986, 988–89 (S.D.N.Y.1995) (noting similarity between the definition of "agent" under Title VII and ADEA); *Birkbeck*, 30 F.3d at 510 (noting that Title VII is the ADEA's "closest statutory kin."); *Miller*, 991 F.2d at 587 ("[t]he liability schemes under Title VII and the ADEA are essentially the same in aspects relevant to [the issue of individual liability]"); *Martin v. United Way of Erie County*, 829 F.2d 445, 448 (3d Cir.1987) (noting similarities in definitions of "employer" and "industry affecting commerce" in Title VII and ADEA); *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 38 (3d Cir.1983) (prohibitions of ADEA were derived in haec verba from Title VII); *Lukaszewski v. Nazareth Hosp.*, 764 F.Supp. 57, 61 (E.D.Pa.1991). Defendants argue that because the Second Circuit has recently held that "individual defendants with supervisory control over a plaintiff may

not be held personally liable under Title VII," *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir.1995), this Court may not find Defendants liable in their individual capacities under the ADEA.

▮ Liability schemes under the ADEA and Title VII are not identical—the ADEA is not based entirely upon Title VII, but is a hybrid statute created from remedies provided under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (the "FLSA"), and Title VII. *Lorillard v. Pons*, 434 U.S. 575, 578, 98 S.Ct. 866, 868–69, 55 L.Ed.2d 40 (1978); *Zippo Mfg. Co.*, 713 F.2d at 38. Indeed certain parts of the FLSA have been explicitly incorporated into the ADEA. *See* 29 U.S.C. § 626(b). However, a comparison of the definitions of the term "employer" in the ADEA, Title VII, and the FLSA indicates that as far as the term "employer" is concerned, the ADEA was modeled after Title VII, and not the FLSA. *Compare* 29 U.S.C. § 630(b), 42 U.S.C. § 2000e(b), and 29 U.S.C. § 203(d).

Nor are the purposes of the ADEA thwarted by the unavailability of an action against individuals in their individual capacities. The remedial goals of the ADEA are sufficiently served by allowing employer liability because the doctrine of respondeat superior allows employers to be held liable for violations of the ADEA. *See Falbaum*, 891 F.Supp. at 991; *Miller*, 991 F.2d at 588.

The cases that Plaintiff relies on for the proposition that individual liability exists under the ADEA, *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1180 (S.D.N.Y.1992); *Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127, 135 (N.D.N.Y.1990), ultimately base their findings of individual liability on interpretations of the FLSA. For the reasons stated above the Court chooses to look to the liability scheme of Title VII, and not the FLSA, when determining whether individual liability exists under the ADEA.[5]

Plaintiff argues that the present case is distinguishable from cases holding that no individual liability exists under the ADEA because Blank and Cucurullo are in high-

---

**5.** At least one court analyzing the ADEA in light of the FLSA has held that no individual liability exists under the ADEA. *See Flamand v. Ameri-*

*can Int'l Group, Inc.*, 876 F.Supp. 356, 361–64 (D.Puerto Rico 1994).

**504**

level management positions at EAB. Other courts that have examined individual liability have not found this to be an important distinction. *See Birkbeck,* 30 F.3d at 510–11 (plaintiff could not recover against the vice-president of defendant's employer corporation who was primarily responsible for plaintiff's dismissal); *Miller,* 991 F.2d at 588 (plaintiff could not recover against against CEO and business owner). The Ninth Circuit has drawn the inference that individuals are exempt from liability under the ADEA from the fact that Congress, in settling upon an employer liability scheme for the ADEA, decided not to burden small entities, limiting ADEA to employers with 20 or more employees. 29 U.S.C. § 630(b); *Miller,* 991 F.2d at 587 ("If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.") The degree of control that one corporate employee exercises over his subordinates does not affect his status as a "small entity."

We therefore hold that no individual liability exists under the ADEA. Defendants' 12(c) motion to dismiss claims against Blank and Cucurullo is granted. Plaintiff may only proceed against the corporate Defendant, EAB, or Defendants Blank and Cucurullo in their representative or official capacities. *Leykis v. NYP Holdings, Inc.,* 899 F.Supp. 986, 991 (E.D.N.Y.1995) ("Such liability gains advantages in discovery, in the ultimate liability of the [employer], and of, course, in the personal satisfaction of calling upon the alleged wrongdoer to publicly answer the accusations levied against him.")

### Conclusions

For the reasons mentioned above, Plaintiff may pursue her demand for liquidated damages, but not punitive damages. Plaintiff's ADEA claims are dismissed against Defendants Cucurullo and Blank in their individual capacities.

The parties are to advise the Court in writing within 30 days of the date hereof of their views as to the discovery that remains to be done, the time within which it can be completed, and the date by which they believe a joint pretrial order can be completed.

SO ORDERED.