**Richard T. PARMLEE, Sr.,**

v.

**State of CONNECTICUT DEPARTMENT OF REVENUE SERVICES, et al.**

**No. Civ. 398CV2021 (HBF).**

United States District Court, D. Connecticut.

Aug. 23, 2001.

Richard T. Parmlee, Sr., Hartford, CT, pro se.

John G. Haines, Hartford, CT, for defendant.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FITZSIMMONS, United States Magistrate Judge.

*Pro se* plaintiff, Richard T. Parmlee, Sr., ("Parmlee") brings this action under Title

VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e17, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* Plaintiff filed a second complaint regarding the claims at issue in this case on October 27, 2001. *See Parmlee v. State of Connecticut Department of Revenue Servs., et al.,* Doc. No. 3:00MC521 (TPS). By agreement of the parties, the new complaint was consolidated with the instant case to be ruled upon simultaneously by the court. (Doc. # 103.) Pending before this court is defendants' Motion for Summary Judgment (Doc. # 104) which addresses all of plaintiff's pending claims.

For the reasons set forth below, **defendants' Motion for Summary Judgment (Doc. # 104) is GRANTED.**

*BACKGROUND*

In February 1987, Richard Parmlee began working at DRS. *See Department of Revenue Serv. v. Parmlee,* No. OLR 07–4107, slip op. at 3 (Sept. 29, 1998) (Meredith, Arb.). During the course of plaintiff's employment, Parmlee instituted a federal court action against DRS claiming color, race, religion and sex discrimination and retaliation in his failure to be promoted within DRS. *See id.; Parmlee v. State of Connecticut Dept. Revenue Serv.,* 2:90CV00125. That suit was ultimately resolved by settlement agreement in August 1994. *See Parmlee,* No. OLR 07–4107, slip op. at 3. Parmlee now alleges that the document he signed was not the settlement agreement filed with the court. *See id.* at 6.

After the settlement of the federal court action, Parmlee continued working at DRS. *See id.* at 3. During the summer of 1997, DRS attempted to transfer Parmlee, with other employees, to a different unit within the agency. *See id.* at 3–4. Parmlee refused to move and claimed that the proposed transfer violated the terms of his settlement agreement.[1] *See id.* at 4. Parmlee was discharged by DRS on September 16, 1997, for insubordination and offensive and abusive conduct toward his coworkers. *See id.* at 2. The matter went to arbitration and on September 28, 1998, the arbitrator found that: "[t]here was not just cause for the dismissal of [Parmlee]. He shall be reinstated to his position within four weeks of the date of this award. There shall be no back pay. The period since his discharge shall be converted to a suspension." *See id.* at 8.

Parmlee was reinstated to his former position at DRS on October 29, 1998. (*See Amendment to Amended Complaint for Employment Discrimination,* Doc. # 90 at 8.) DRS terminated his employment a second time on May 4, 1999, based upon plaintiff's insubordination toward his supervisors and co-workers. (*See id.* at 15.) Parmlee now claims that he was discharged for "exposing unlawful practices by [DRS]." (Doc. # 3 at 6.) Parmlee further alleges that unidentified DRS employees actively prevented him from obtaining "relief" from agencies including his "Union, Unemployment Compensation, Commission of Human Rights [and] Opportunities, [and the] State's Attorney." (*Id.*) Parmlee also alleges that "most of those named in this suit" conspired to violate his rights. (*Id.*)

Parmlee filed an Affidavit of Illegal Discriminatory Practice ("Affidavit") with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on December 24, 1997.[2] (Doc. # 78 at Exhibit A1.)

---

1. The court notes that plaintiff requested a transfer into the same unit at issue approximately two and a half months earlier. *See Parmlee,* No. OLR 07–4107, slip op. at 6.

2. This action instituted a dual filing with the

Parmlee alleged DRS discriminated against him on the basis of his religion (Jehovah's Witness) and ancestry (Native American), and in retaliation for his opposition to DRS' discriminatory practices. (*See id.*) The CHRO dismissed Parmlee's complaint on March 24, 1998, because the "information in the case file is not likely to show that [DRS] failed to promote, harassed, terminated, and retaliated against you on the basis of your ancestry, religion, and previous opposition of [DRS's] discriminatory practices." (*Notice of Dismissal,* Conn. Comm. Human Rights and Opportunities, March 24, 1998, Doc. # 78 at Exhibit A2.) The CHRO rejected Parmlee's request for reconsideration of his complaint on June 17, 1998. (*See Doc.* # 78 at Exhibit A2.) The Equal Employment Opportunity Commission ("EEOC") closed Parmlee's file because it adopted the findings of the CHRO, and gave Parmlee a right to sue letter on July 6, 1998. (*See Dismissal and Notice of Rights,* Equal Employment Opportunity Commission, Doc. # 3.)

Parmlee commenced this action on October 13, 1998, seeking money damages, injunctive relief, back pay, and reinstatement to employment with DRS. (Doc. # 3 at 1, 7.) Judge Alan H. Nevas granted the defendants' motion to dismiss Parmlee's complaint without prejudice. (*See Ruling on Defendant's Motion to Dismiss,* Doc. # 55.) The court found that in its present form the complaint failed to state a claim for relief under Title VII, that individual employees could not be held personally liable under Title VII, and that liability under Title VII is limited to employers. (*See id.* at 6–8.)

Parmlee filed two amended complaints on August 25, 1999 (Doc. # 72, 73), and an amendment to the amended complaints on December 22, 1999 (Doc. # 90). Defendants filed motions to dismiss both amended complaints and the amendment to the amended complaint. (Doc. # 77, 84.) Plaintiff thereafter filed a motion for summary judgment on December 22, 1999. (Doc. # 88.) Defendants filed their opposition to summary judgment. (Doc. # 85.) All defendants except for DRS, Bruce Chamberlain (Chief of Personnel), Assistant Attorneys General Jonathan Ensign and Paul Scrimonelli, and plaintiff's former counsel Anthony Ball were voluntarily dismissed.[3] (Doc. # 82.)

In its ruling on the defendants' Motion to Dismiss (Doc. # 97), this court dismissed all of the remaining defendants other than DRS. Parmlee's claims alleging sex discrimination, age discrimination, and claims of a hostile work environment based on his race and religion were also dismissed. Parmlee's claims of race and religion discrimination based on disparate treatment and his retaliation claim remained viable after the court's ruling.

Prior to the court's ruling on the motion to dismiss, Parmlee filed an additional claim with the CHRO and EEOC claiming that he was "a victim of unlawful employment discrimination because of [his] sex (male), race (Cherokee), color (black), religion (Jehovah's Witness), national origin (Native American) and age (47)." (*See* 3:00mc521(TPS), Doc. # 3, Letter dated July 27, 2000 from the EEOC). The EEOC right to sue letter attached to the Dismissal and Notice of Rights stated that "[t]he evidence revealed that others, regardless of race, re-

---

Equal Employment Opportunity Commission ("EEOC"), also effective December 24, 1997. (*See Affidavit,* Doc. # 78 at Exhibit A1.)

3. Anthony Ball was dismissed from the proceedings on August 11, 2000 (Doc. # 96), and the other defendants on October 22, 1999 (Doc. # 82).

ligion, sex, national origin, and who have not opposed or participated in an investigation of alleged discriminatory practices, have been suspended and terminated for insubordination and violating company policies." (*See id.*) The EEOC closed Parmlee's file because after its investigation it was unable to conclude that the allegations established violations of the applicable statutes and gave Parmlee a right to sue letter on July 27, 2000. (*See id.*)

Parmlee commenced the second action on October 27, 2000, by filing a motion to proceed *in forma pauperis* and his complaint.[4] In his complaint Parmlee again sought money damages, injunctive relief, back pay, and reinstatement to his former position with DRS. Parmlee claimed that defendants discriminated against him on the basis of his race, religion, national origin, gender, age, and color. Parmlee alleged that defendants discriminated against him by, among other claims, terminating his employment, failing to promote him, and retaliating against him for exposing DRS's unlawful practices.

The new complaint was incorporated into the instant action by this court's order dated December 21, 2000. (Doc. # 103.) Defendants filed their answers to all of the pending complaints, along with their motion for summary judgment on February 15, 2001. (Doc.## 104–111.) Parmlee filed his response to the summary judgment motion on May 9, 2001. (Doc. # 116.)

## STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to

judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as

---

4. Judge Thomas P. Smith denied Parmlee's *in forma pauperis* application on October 27, 2001. [Doc. # 2.]

a matter of law even if the disputed issues were resolved in favor of the non-moving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992).

The Second Circuit has also held that additional considerations must be "taken into account when deciding whether summary judgment should issue in an employment discrimination action." *Burrell v. City Univ. of New York*, 995 F.Supp. 398, 405 (S.D.N.Y.1998) (citing *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219, 1224 (2d Cir.1994)). Summary judgment may be appropriate in some employment discrimination actions, but this remedy should be applied with caution as "writings directly supporting a claim of intentional discrimination are rarely, if ever, found." *Burrell*, 995 F.Supp. at 405. In acting with caution, the court must closely scrutinize affidavits and other documentary evidence "for circumstantial evidence which, if believed, would show discrimination." *Id.* However, the non-moving party cannot defeat a motion for summary judgment by merely asserting "conclusory allegations of discrimination." *Greene v. State of New York, et al.*, 1998 WL 264838, *6 (S.D.N.Y. May 22, 1998). *See also Smith v. American Express Co.*, 853 F.2d 151, 154 (2d Cir.1988); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Plaintiff has filed this action *pro se*, and, as the Second Circuit directs, when considering the sufficiency of a *pro se* complaint, this Court "must construe it liberally, applying less stringent standards than when a plaintiff is represented by counsel." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citing *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam)); *Branham v. Meachum*, 77 F.3d 626, 628–29 (2d Cir.1996).

However, even a *pro se* party may not create a genuine issue of material fact by presenting unsupported statements or "sweeping allegations." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir.1997). The non-moving party "cannot defeat a motion for summary judgment by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996) (citations omitted); *see also* Fed. R.Civ.P. 56(e) (a non-moving party "may not rest upon the mere allegations or denials of the [non-moving] party's pleading").

## DISCUSSION

Defendants seek summary judgment on Parmlee's claims of discriminatory retaliation, disparate treatment, and gender discrimination because DRS had legitimate, nondiscriminatory reasons for not promoting and for discharging Parmlee. Defendants also argue that claims arising from events that occurred more than 300 days prior to the filing of claims with the CHRO are time barred and that the Eleventh Amendment bars Parmlee's age discrimination claims. Parmlee responds that material issues of fact exist and that therefore the case should proceed to trial. Parmlee's causes of action are discussed individually below.

Before the court turns to each of Parmlee's claims, it must first address the question of proper defendants in this case. In his ruling on defendants' motion to dismiss, Judge Nevas found that the only remaining proper party to the suit was DRS. Parmlee's October 2000 complaint asserts claims against DRS and various

individual defendants.[5] As discussed in the ruling on the motion to dismiss, DRS employees can not be held individually liable under either Title VII or the ADEA, and individuals can not be held liable as employers unless they possessed supervisory control over the plaintiff.[6] *See also Martin v. Chemical Bank,* 1997 WL 701359, *3 (2d Cir. Nov.10, 1997) (unpublished disposition); *Kern v. City of Rochester,* 93 F.3d 38, 45 (2d Cir.1996), *cert. denied* 520 U.S. 1155, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997); *Diana v. Schlosser,* 20 F.Supp.2d 348, 352 (D.Conn.1998); *Wray v. Edward Blank Assoc., Inc.,* 924 F.Supp. 498, 502–04 (S.D.N.Y.1996). Therefore, as Parmlee has not alleged that any of the individual defendants exercised the requisite control over his employment, the only proper defendant to this consolidated action is DRS.

In addition, the Court finds as an initial matter that all of Parmlee's allegations related to the 1994 settlement agreement, such as his claims for fraud, conspiracy, forgery, and breach of contract, fail to state a claim under Title VII. Even if these allegations stated a viable claim under Title VII, the Court holds the claims are time-barred because the events giving rise to these claims occurred more than 300 days before Parmlee filed his claims with the CHRO and EEOC.[7] *See* 42 U.S.C. § 2000e–5(e)(1); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir. 1998).

### A.   *Age Discrimination Claim*

■ Parmlee alleges that DRS discriminated against him on the basis of his age in violation of the ADEA. In *Kimel v. Florida Board of Regents,* the United States Supreme Court held that Congress lacked power under Section 5 of the Fourteenth Amendment to abrogate the states' sovereign immunity when it enacted the ADEA. *See* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). *See also Butler v. New York State Dept. of Law,* 211 F.3d 739, 745–46 (2d Cir.2000). Thus, Parmlee's federal age discrimination claim against DRS, as an agency of the State of Connecticut, is barred by the Eleventh Amendment.

### B.   *Hostile Work Environment Claims*

■ Parmlee alleges that he was subjected to discrimination on the basis of his race, religion, gender, color, and national origin and that, because of this discrimination, he was forced to work in a hostile environment. This court dismissed Parmlee's hostile work environment claim based on racial and religious discrimination in its ruling on the Motion to Dismiss. Therefore, the only remaining hostile work environment claims are based on Parmlee's allegations of gender, color and national origin discrimination.

A hostile work environment exists in violation of Title VII where the "workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993);

---

**5.** Although the court is unable to discern a list of the individual defendants named in the October 2000 complaint, it appears that the individual defendants are the same as those named in the original complaints.

**6.** Parmlee's claims under Title VII and the ADEA must be dismissed as to those agencies and individuals unrelated to DRS, as those agencies and individuals do not qualify as the plaintiff's "employer" within the meaning of either statute.

**7.** There is no evidence in the record before the court that an exception to the statute of limitations would apply in this case.

*Oliveira v. State of Connecticut, Dept. Children and Families,* 2000 WL 565489, \*2–\*3 (D.Conn. Mar.29, 2000). To prevail on a hostile work environment claim, the plaintiff must show both "1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his employment and 2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Shabat v. Billoti, et al.,* 108 F.3d 1370 (2d Cir.1997), 1997 WL 138836 (unpublished disposition), (citing *Briones v. Runyon,* 101 F.3d 287, 291 (2d Cir.1996)).

Parmlee's October 2000 complaint cites no specific instances of discrimination and fails to allege that the discrimination was so pervasive and sufficiently permeated his workplace, so as to alter the conditions of his employment. To the extent that Parmlee argues that the failure to hire, promote, train, or pay men the same salaries as women who are performing the same or substantially the same job duties, and the maintenance of segregated pay and job classification systems creates a hostile work environment, this argument fails. Parmlee failed to provide any evidence to substantiate any of these claims or evidence of pervasive discrimination that altered the conditions of his employment.[8]

To his objection to the summary judgment motion, Parmlee attached a report with recommendations authored by the University of Connecticut Health Center. This investigation concerned the Collection & Enforcement unit of the DRS and was initiated at the request of human resource personnel because of poor morale in the unit. The report indicates that the unit employees have a low morale which is at least partially attributable to management styles and a restrictive work environment. Although the report supports Parmlee's position that the work environment was unpleasant, it does not provide any evidence that the environment was pervaded by discrimination directed toward persons in protected classes. Rather, the report indicates that negative perceptions about the work environment are held by a majority of employees in the unit. Without more, plaintiff has failed to show that discrimination was so pervasive and sufficiently "permeated" his workplace, as to alter the conditions of his employment. *See Shabat,* 1997 WL 138836, at \*1 (nine alleged incidents of discrimination over a three and one-half year period were not sufficiently frequent or severe to support claim of hostile work environment); *Kaplan v. Banque Nationale de Paris,* 1995 WL 753900 (S.D.N.Y. Dec.19, 1995) (several anti-Semitic remarks over the course of a few months did not rise to the level of a Title VII violation). Even assuming that plaintiff sufficiently pled a hostile work environment which altered the conditions of his employment, he has also failed to provide any basis for imputing the creation of a hostile work environment to DRS.

In the context of a summary judgment motion, Parmlee must provide more than "conclusory statements" in order to avoid dismissal. Although the court applies liberal standards to *pro se* pleadings, the evidence needed at the summary judgment stage mirrors the burden of proof in the underlying action. The court considers

---

8. Parmlee received notice from the court on multiple occasions, detailing the response required for a summary judgment motion, and warning him of the possibility that judgment could be entered against him if he failed to respond to the motion or attach evidence in support of his claims. Parmlee received notice in the court's ruling on the motion to dismiss dated September 27, 2000 (Doc. # 97), the court's order dated December 21, 2000 (Doc. # 103), and again in the court's order dated April 10, 2001 (Doc. # 115).

"the actual quantum and quality of proof" required as well as which party bears the burden of presenting that proof. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. Where, as here, the ultimate burden of proof is on the nonmoving party, the moving party meets his initial burden of proof on summary judgment by " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to "make a showing sufficient to establish the existence of [the challenged] element essential to [his] case.ıD" *Id.* at 322, 106 S.Ct. 2548.

In this case, defendants have identified the absence of evidence indicating the existence of a hostile work environment. In response, Parmlee has provided no evidence in support of his hostile work environment claim. Parmlee was informed in three court orders that a memorandum was insufficient to oppose the motion for summary judgment and instructed on the types of evidence he could present. Without any documentary support, Parmlee's claims of discrimination based on a hostile work environment are conclusory at best. Parmlee failed to meet his burden of providing evidence demonstrating a genuine issue of material fact regarding the viability of this claim against DRS under Title VII. Therefore, **defendants' summary judgment motion is GRANTED as to Parmlee's hostile work environment claim.**

### C. *Disparate Treatment Claims*

Parmlee also alleges that defendants discriminated against him, subjecting him to disparate treatment because of his race, religion, gender, national origin and color. Defendants argue that there were legiti-

mate grounds for the decisions DRS made concerning his employment and that there is no basis for Parmlee's disparate treatment claim.

As discussed above, to avoid summary judgment a plaintiff must provide evidence showing that there is a genuine issue of material fact for trial. Part of this showing requires plaintiff to establish a *prima facie* case for his employment discrimination claim under Title VII. To make out a *prima facie* case of employment discrimination under Title VII, a plaintiff must prove: (1) that he belongs to a protected class; (2) that he was performing his duties satisfactorily; (3) that he was discharged or subject to an adverse employment decision; and (4) that the discharge or decision occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. *See McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997) (citations omitted); *Butts v. City of New York Dep't of Preservation and Dev.,* 1998 WL 13851 (S.D.N.Y. Jan.15, 1998).

In this case, there does not appear to be any dispute that Parmlee, as a "Native (black) American Cherokee Indian" and as a Jehovah's Witness, is a member of a protected class under Title VII. There also appears to be no dispute that Parmlee was subject to adverse employment decisions, in that he was not promoted and was terminated by DRS on two occasions.

■ However, Parmlee has failed to establish a *prima facie* case of employment discrimination because he has not shown that any of the adverse employment decisions occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in a protected class.[9] *See McLee,* 109 F.3d at 134.

9. Although there is a dispute as to whether

Parmlee was satisfactorily performing his job

Plaintiff provided no affidavits, deposition transcripts, or documents in opposition to defendants' motion that could raise an inference of discrimination on the basis of plaintiff's race, gender, religion, national origin, or color. Parmlee claims that he was wrongfully terminated by DRS, forced to attend unscheduled meetings, denied the benefits of employment seniority, given menial and demeaning duties, denied promotion opportunities, and denied training opportunities because of DRS's discrimination against him. However, Parmlee's opposition to defendants' summary judgment motion did not provide any evidence of these claims which would create a genuine issue of material fact for trial. As discussed above in relation to Parmlee's hostile work environment claim, conclusory allegations or denials in legal memoranda are not evidence and cannot by themselves create a genuine issue of material fact where none exists. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980).

In the absence of any evidence submitted in opposition to defendants' motion, the court must accept as true any factual assertions contained in the documents accompanying the motion. Here, the court accepts as true defendants' assertion that Parmlee was fired and did not receive promotions from his clerk position because of his work history with DRS. Defendants provided evidence that this work history included a pattern of insubordination, abusive and offensive behavior, misuse of state equipment, tardiness, and an inability to complete work in a timely manner. (Doc. # 105, Exhibits A, B, C, D, E, F, G.) DRS

also submitted evidence that these problems were repeatedly brought to Parmlee's attention in memoranda, letters, and meetings between DRS managers and plaintiff. (Doc. # 105.) Parmlee does not appear to dispute that he received notice from DRS managers that there were problems with his work performance and does not provide any evidence that the claims made by DRS are inaccurate. Rather, Parmlee seems to argue that he never refused to perform any work assignment (Doc. # 116, at 32) and that the letters and meetings requested by management constituted a form of harassment (Doc. # 3, Oct. 2000 Complaint at 21).

Regarding Parmlee's claims that he was discriminated against because he was given demeaning and menial duties, defendants provided an affidavit from Anne Alling, Human Resources Administrator for DRS, which indicated that Parmlee's duties as a clerk were at an entry level and that his duties did not differ from other DRS clerks. (Doc. # 105, Exhibit A para 13.) Parmlee provided no evidence to contradict this statement.

Parmlee also argues that DRS failed to promote him from the position of clerk, and that DRS discriminated against him by requiring Parmlee to pass an examination before the promotion. Defendants respond by arguing that the settlement agreement specifically stated that, if Parmlee passed the Assistant Accountant Exam, then he would be promoted regardless of his score on the exam. (Doc. # 105, Exhibit H.) Because Parmlee failed to pass the exam, defendants argue that they could not promote him under the terms of the agreement.[10] Parmlee does not dis-

---

duties, this discussion is subsumed into the analysis of whether the adverse employment actions occurred in circumstances giving rise to an inference of discrimination. Therefore, the court will address this element below.

10. As a matter of agency policy, defendants attached evidence that DRS employee promotions are based on either examination results or by reclassification without examination. (Doc. # 105, Exhibit A–15, at 20.)

pute that he was given opportunities to take the exam and that he has not passed the exam. Rather, Parmlee argues that he should have been promoted without having to take the exam and that he should have been promoted pursuant to the arbitration decision. In support of his argument that he should not have been required to take the exam, Parmlee argues that other employees were not required to take the exam before receiving a promotion. (Doc. # 3, Oct. 2000 Complaint.)

Parmlee also argues that he was discriminated against by being placed in a DRS unit with a majority of female employees, where he was harassed because of his gender and race and "set-up" to make mistakes. During this time, Parmlee alleges, he was not provided with the same training opportunities as the women in his group.

Parmlee has not provided the court with any evidence to refute defendants' factual assertions or to support the allegations of his disparate treatment claim. As discussed above, conclusory statements made in the pleadings, without any supporting evidence, are insufficient to withstand a motion for summary judgment. The Court finds that defendants presented evidence that any adverse employment actions DRS took regarding Parmlee did not occur under circumstances giving rise to an inference of discrimination. Parmlee did not provide any evidence other than statements in his pleadings that contradict defendants' factual assertions and would create material issues of fact for trial. For these reasons, **plaintiff's Title VII claim for disparate treatment based on gender, race, religion, national origin, and color discrimination fails and defendants' motion for summary judgment is GRANTED.**

### D. Retaliation Claims

█ Parmlee's remaining claim is that defendants retaliated against him for exposing DRS's unlawful practices. Defendants respond that this claim fails because DRS had legitimate, non-retaliatory reasons for terminating or not promoting Parmlee and that Parmlee's remaining claims of retaliatory conduct are unfounded.

To support a retaliation claim, plaintiff must show: (1) that he was engaged in activity protected by Title VII; (2) that his employer knew of his involvement in the protected activity; (3) that the plaintiff experienced an adverse employment action; and (4) that a causal connection exists between the adverse employment action and the protected activity. See McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir.1997); Malarkey v. Texaco, Inc., 983 F.2d 1204, 1213 (2d Cir.1993); Equal Employment Opportunity Commission v. Regency Architectural Metals Corp., 896 F.Supp. 260, 271 (D.Conn.1995). If a plaintiff makes out a prima facie case of retaliation, then the burden shifts to the defendant to articulate a "legitimate, non-retaliatory reason for the complained of action...." Quinn v. Green Tree Credit, 159 F.3d 759, 768–69. If a defendant meets this burden, a plaintiff must then produce evidence that the given reason is merely a pretext for retaliation. See id.

Defendants do not appear to dispute that Parmlee engaged in protected Title VII activity, that it had knowledge of this activity, or that Parmlee was subjected to adverse employment decisions. However, the Court finds that Parmlee has not made a prima facie showing because he has failed to establish a causal connection between the adverse action and his protected activity. Although defendants do not focus on this element, Parmlee provided no evidence that the employment decisions fol-

lowed close in time to the protected activity, that he was treated differently after the complaint, or that other similarly situated employees were treated more favorably after the he engaged in the protected activity. *See Sims v. MME. Paulette Dry Cleaners*, 580 F.Supp. 593, 598 (S.D.N.Y. 1984). Without such evidence, the court cannot find a causal connection between the protected activity and the adverse employment action.[11] Therefore, Parmlee's retaliation claim also fails.

Even if Parmlee had provided evidence sufficient to create material issues of fact for trial on the elements of his *prima facie* retaliation claim, he has offered no evidence from which a finder of fact could conclude that the reasons given by the defendant for the adverse employment actions were a pretext for discrimination against him. As discussed above, and as set forth in the exhibits accompanying defendants' statement of facts, defendant has offered legitimate, non-discriminatory reasons for all of the adverse employment decisions DRS made with respect to the plaintiff.

The affidavits and exhibits attached to defendant's statement of facts detail Parmlee's employment history as one in which there were several conflicts between plaintiff and other employees, as well as extensive documentation by management of Parmlee's tardiness, refusal to follow agency rules, and insubordination. As with Parmlee's other discrimination claims, Parmlee has not provided any evidence to refute defendants' portrayal of his employment history with DRS. Parmlee's failure to produce any evidence other than speculation that defendants' articulated reasons were pretextual compels the conclusion that summary judgment be granted on Parmlee's claims that defendants retaliated against him by terminating his employment and by refusing to promote him.

Parmlee's remaining retaliation claims against DRS also fail. Parmlee alleged that other specific retaliatory acts committed by DRS included: labeling him a whistle blower; giving false and derogatory references about plaintiff after he was fired; monitoring those employees who complained of discrimination, including plaintiff, and subjecting them to further harassment; and placing plaintiff's picture at DRS security checkpoints in order to destroy his reputation.

Defendants provided affidavits from DRS supervisors which indicated that Parmlee has not been referred to as a "whistle blower" and that the agency does not "harass, monitor, or keep lists of employees who oppose discrimination." (Doc. # 105, Exhibit A.) Defendants also provided evidence that no requests for references for Parmlee have been received by DRS and that all reference requests are sent to the Human Resources Department. (Doc. # 105, Exhibit A.) Finally, defendants stated that all employees who are dismissed for conduct involving misconduct or insubordination have their employee ID badges collected, prohibiting them from further access to the building. (Doc. # 105, Exhibit A.) As part of this standard procedure, a copy of the discharged employee's photo ID is provided to security guards so that they will recognize and deny those persons access to the building. (Doc. # 105, Exhibit A.)

---

11. Parmlee was first discharged on September 16, 1997, and then reinstated on October 29, 1998. He filed his first CHRO/EEOC complaints on December 24, 1997. Parmlee's DRS employment was terminated a second time on May 4, 1999. On November 2, 1999, Parmlee filed a second complaint with the CHRO, which was dismissed for lack of jurisdiction. Parmlee filed an amended complaint with the CHRO on December 2, 1999.

Parmlee did not provide any evidence other than speculation to refute the evidence provided by defendants in support of this motion. As discussed above, conclusory statements made in the pleadings, without any supporting evidence, are insufficient to withstand a motion for summary judgment. Therefore, defendants' motion for summary judgment is GRANTED.

*CONCLUSION*

For the reasons stated above, **defendant's Motion for Summary Judgment (Doc. # 104) is GRANTED.** The clerk is directed to enter judgment for the defendant and close the file.

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. # 81] on September 20, 1999, with appeal to the Court of Appeals.